52 F.3d 328
 66 Empl. Prac. Dec. P 43,545
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Leroy A. BARNHART, Jr., Plaintiff-Appellant,
v.
MACK TRUCKS INCORPORATED, Defendant-Appellee.
 No. 94-3328.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 14, 1995.
Decided April 13, 1995.
 
 Before WOOD, Jr., COFFEY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 On July 17, 1992, Leroy A. Barnhart, Jr. was discharged from his position as an employee of Mack Trucks Incorporated ("Mack"). Barnhart filed suit pursuant to the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621, et seq., alleging that his termination constituted an act of unlawful age discrimination. Mack moved for summary judgment and the case was dismissed. Barnhart appeals, and we affirm.
 
 I.
 
 2
 In the proceeding below,[1] Mack filed a statement of material facts in support of its motion for summary judgment pursuant to Local Rule 12(m). Barnhart failed to file a response; therefore, under Local Rule 12(n), Barnhart is deemed to have admitted the factual assertions contained in Mack's Rule 12(m) statement to the extent that those assertions are supported by the record. Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir.1992) (citations omitted) (upholding "the strict application of Local Rule 12(n)"). These facts have been adequately set forth in the magistrate judge's Memorandum Opinion and Order. Accordingly, we need only summarize the pertinent facts here.
 
 
 3
 Barnhart worked for Mack from 1978 until 1992, serving in a variety of positions. Barnhart ascended the corporate ladder over his career until, at the time of his dismissal, he was the regional vice-president for Mack's central sales region. As regional vice-president, Barnhart's primary function was to assist Mack's distributors in selling Mack's products within his region. Those performance reviews which Barnhart received were favorable.
 
 
 4
 On July 17, 1992, Barnhart was dismissed by Paul Ritter, Mack's senior vice-president of sales and marketing. Barnhart was told that his job performance was unsatisfactory. Two specific reasons were given in support of his dismissal: (1) he had failed to become sufficiently involved in the retail-level sales of Mack's products; and (2) Mack's distributors lacked confidence in him and did not support him. At the time of his termination, Barnhart was 51 years old. He was subsequently replaced by Ken Yacobozzi, who was then 35 years old.
 
 
 5
 Barnhart filed an administrative charge against Mack with the EEOC alleging that his termination violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621, et seq. On December 12, 1992, Barnhart also filed suit in district court alleging age discrimination under the ADEA. After Barnhart filed suit, the EEOC elected to not pursue his claim. Following discovery, Mack moved for summary judgment. The trial court granted this motion and denied Barnhart's later motion to reconsider. This appeal followed.
 
 II.
 
 6
 We review a grant of summary judgment by considering all factual issues in the light most favorable to the nonmoving party (herein Barnhart) and determining de novo whether there exists any genuine issue of material fact requiring submission of the case to the finder of fact or whether judgment as a matter of law was appropriate. Fed.R.Civ.P. 56(c); Colburn v. Trustee of Indiana Univ., 973 F.2d 581, 585 (7th Cir.1992). Moreover, "[t]his standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993) (citations omitted).
 
 A.
 
 7
 In order to show a violation of the ADEA, Barnhart must demonstrate that his age was "a determining factor" in Mack's decision to fire him. Smith v. Great Am. Restaurants, Inc., 969 F.2d 430, 434 (7th Cir.1992) (citations omitted). Where, as here, there is no direct evidence of age discrimination, Barnhart must proceed under the indirect, burden-shifting method of proof first articulated for use in Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). At the first stage of this method, the burden rests upon the plaintiff to establish the four elements of a prima facie case of age discrimination. " 'The employee must show: (1) he was in the protected class (persons between the ages of 40 and 70), (2) he was doing his job well enough to meet his employer's legitimate expectations, (3) he was discharged or demoted, and (4) the employer sought a replacement for him.' " McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 371 (7th Cir.1992) (quoting Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 335 (7th Cir.1991) (citation omitted)).
 
 
 8
 Of these elements, Mack contests only the second--alleging that Barnhart's job performance was unsatisfactory at the time of his dismissal. The magistrate judge, however, citing Barnhart's fourteen years of employment with Mack and the fact that only a minimal showing is needed to satisfy this element, found that Barnhart had sufficiently stated a prima facie case of discrimination. We, too, find that Barnhart has stated a prima facie case. See Hong v. Children's Memorial Hosp., 993 F.2d 1257, 1263 n. 5 (7th Cir.1993), cert. denied, 114 S.Ct. 1372 (1994) (stating, in the context of the establishment of national origin discrimination under Title VII, that "[w]e have long recognized that an employer's acceptance of work without express reservation is sufficient to show that the plaintiff was performing satisfactorily for the purpose of shifting the burden of proof") (citing Flowers v. Crouch-Walker Corp., 552 F.2d 1277, 1283 (7th Cir.1977)).
 
 B.
 
 9
 Once the plaintiff has established his prima facie case, a rebuttable presumption of discrimination is thereby created. Weihaupt v. American Medical Ass'n, 874 F.2d 419, 426 (7th Cir.1989). The burden of production then shifts to the employer (the burden of proof, however, remains always with the employee) who must then " 'articulate a legitimate, nondiscriminatory reason for the employee's discharge.' " McCoy, 957 F.2d at 371 (quoting Karazanos, 948 F.2d at 335 (citations omitted)). We agree with the magistrate judge's finding that the two reasons articulated by Mack for Barnhart's dismissal--namely, that Barnhart failed to adequately involve himself in retail sales and that Barnhart's distributors lacked confidence in him--are legitimate and nondiscriminatory on their face and, therefore, sufficient to dissolve the presumption of discrimination.
 
 C.
 
 10
 After the employer has dissolved the presumption of discrimination, the burden shifts back to the employee " 'to show that the employer's proffered reasons are a pretext.' " McCoy, 957 F.2d at 371 (quoting Karazanos, 948 F.2d at 336 (citations omitted)). "To establish that an employer's reasons are pretext, an employee may show (1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence." Karazanos, 948 F.2d at 336 (citation omitted). To defeat a motion for summary judgment, the employee need only produce evidence from which a rational factfinder could infer that the employer had been untrue concerning the proffered reasons. Shager v. Upjohn Co., 913 F.2d 398, 401 (7th Cir.1990) ("If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, such as age, may rationally be drawn."). We take care to note here that it is not sufficient for Barnhart to show that Mack made a mistake or exercised poor judgment in firing him; rather, Barnhart must show that Mack did not honestly believe in the reasons it gave for firing him. McCoy, 957 F.2d at 373 (citations omitted).
 
 
 11
 In this case, Barnhart advances the following arguments in an attempt to demonstrate that Mack misrepresented its reasons for firing him: (1) Barnhart received satisfactory performance evaluations of his work between 1978 and 1988; (2) Barnhart asked for more recent evaluations numerous times, but his requests were ignored; (3) Barnhart's region met or exceeded its sales quotas for 1991 and 1992; and (4) Mack contacted Barnhart's distributors after Barnhart had filed his charge with the EEOC and requested written opinions of Barnhart. For the reasons given below, we find that the sum total of these arguments is insufficient to defeat Mack's motion for summary judgment.
 
 
 12
 First, the fact that Barnhart received satisfactory performance evaluations at various times remote from his discharge would not convince a rational fact-finder that Mack misrepresented the reasons it gave for dismissing Barnhart. The most recent of these evaluations was completed approximately four years before Barnhart was dismissed; the crucial time period for demonstrating pretext, however, is the time of Barnhart's discharge. Anderson v. Stauffer Chem. Co., 965 F.2d 397, 401 (7th Cir.1992) (citation omitted). Furthermore, these performance evaluations, which we have reviewed, are not indicative of pretext because they do not address the specific reasons articulated by Mack for Barnhart's dismissal. Id. at 403 ("The fact that an employee does some things well does not mean that any reason given for his firing is a pretext for discrimination.").
 
 
 13
 Second, Barnhart's claim that he requested, but did not receive, more recent performance evaluations is insufficient to establish pretext because there is absolutely nothing in the record to indicate that Barnhart alone suffered this fate. Moreover, the absence of more recent evaluations also fails to go towards showing that the two reasons given for Barnhart's dismissal were false.
 
 
 14
 Third, the fact that Barnhart's region met or exceeded its sales quotas for the years 1991 and 1992 likewise fails to show that Barnhart did not believe in the reasons Mack proffered for firing Barnhart. As is the case with the performance evaluations, there is lacking here the necessary correlation between satisfactory sales figures and the reasons given for Barnhart's discharge. The record does not show that Mack required nothing more of its regional vice-presidents than the meeting of their sales quotas.
 
 
 15
 Fourth, Barnhart's allegation that Mack sought written opinions of Barnhart from certain distributors also fails to tip the scales towards a rational finding that Mack was untrue concerning its decision to fire him. Barnhart argues that Mack sought the written opinions of these distributors in an effort to create a paper trail to justify its termination decision. Towards this end, Barnhart seeks to introduce the affidavit of Larry Lewis, one of the distributors allegedly contacted by Mack. In relevant part, the affidavit states:
 
 
 16
 3. Some time after [Barnhart] left [Mack's] employ, (I now know that he was terminated) I was contacted by Paul Ritter, Mark Gustafson, and Timothy Donaldson (Mr. Donaldson introduced himself as General Counsel for Mack Trucks, Inc.) about writing a letter for them about my feeling about Leroy Barnhart in his capacity as Regional Manager.
 
 
 17
 A) They wanted me to write a letter that Leroy Barnhart was not the right man for the job.
 
 
 18
 B) I did not agree with that statement.
 
 
 19
 4. The letter so requested was never written and therefore never signed by me.
 
 
 20
 The magistrate judge ruled that the affidavit contained inadmissable hearsay and that it was irrelevant to the issue of pretext. Assuming arguendo that the statements repeated in the affidavit do constitute an admission by a party-opponent within the meaning of Rule 801(d)(2) of the Federal Rules of Evidence and are therefore not hearsay, as Barnhart argues, we nonetheless agree with the magistrate judge that the statements are irrelevant to a showing of pretext. The statements repeated in the affidavit do not suggest that Barnhart's age was a factor in his termination, nor do they address the specific reasons provided by Mack for Barnhart's dismissal. In Anderson v. Stauffer Chem. Co., a discharged employee likewise claimed that evidence which allegedly pointed towards the creation of a paper trail was sufficient to show that the employer had lied concerning the reasons given for his dismissal. In response, we stated:
 
 
 21
 The problem with [the employee's] theory is that he has failed to produce any factual evidence indicating that the complaints against him were fabricated or unfounded. His theory that [his supervisor's] memos and complaint letters were manufactured in an attempt to justify his firing is, at best, speculation, and speculation is not enough to avoid summary judgment.
 
 
 22
 965 F.2d at 402 (citation omitted). Here, as was the case in Anderson, the employee has only speculation to offer the factfinder. The affidavit shows that Lewis was merely questioned about his "feeling" toward Barnhart and, in particular, whether he thought Barnhart was the "right man for the job." No one asked Lewis to fabricate a complaint against Barnhart.
 
 
 23
 That Mack may have contacted certain distributors after Barnhart filed his EEOC charge does not give rise to the rational inference that Mack misrepresented its belief that Barnhart's distributors were dissatisfied with him. At best, the affidavit demonstrates that Mack was conscious of the ADEA's potential applicability, but this does not give rise to the rational inference that Mack violated the ADEA. E.g., Partington v. Broyhill Furniture Indus., Inc., 999 F.2d 269, 271 (7th Cir.1993) ("No inference of guilt can be drawn from awareness of one's legal obligations; to do so would be to promote the ostrich over the farther-seeing species."). It is true that Partington went on to affirm a jury finding in favor of the discharged employee, but there was additional evidence present in that case--and absent here--which was indicative of discrimination. See id. at 272 (noting, for example, evidence that the employer had ordered a "purge" of the files of its terminated employees, most of whom were over the age of forty).
 
 
 24
 It is true that Barnhart was discharged and then replaced by an employee approximately sixteen years his junior, but further evidence is required to prove a violation of the ADEA. "Typically, younger workers will replace older ones; this is an unremarkable phenomenon that does not, in and of itself, prove discrimination." Futrell v. J.I. Case, 38 F.3d 342, 348 (7th Cir.1994) (citations omitted). The ADEA is not designed to provide ironclad job insurance for older employees. "The market, like the jungle to which it is sometimes compared, is pitiless. Nothing in the age discrimination law provides tenure to competent older workers. They can be let go for any reason or no reason, provided only that the reason is not their age." Partington, 999 F.2d at 271. Here, Barnhart has failed to produce evidence sufficient to allow the rational inference that the reasons proffered by Mack for his dismissal were pretext; his claim must therefore fail.
 
 III.
 
 25
 For all of the foregoing reasons, the decision of the trial court granting summary judgment in favor of the defendant is affirmed.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The case was originally assigned to Judge Ann Claire Williams. Following the consent of both parties, the case was reassigned to Magistrate Judge Joan H. Lefkow