**Iona JOHNSON, Plaintiff,**

**v.**

**INDOPCO, INC., a New York Corporation, d/b/a Unichema North America, Defendant.**

**No. 93 C 2973.**

United States District Court, N.D. Illinois, Eastern Division.

June 7, 1995.

Steven R. Hansen, J. Douglas Weingarten, Donald L. Johnson, Johnson Law Firm, Chicago, IL, for plaintiff.

Lisa A. Weiland, Ronald Wilder, Stephen Wayne Koslow, Schiff, Hardin & Waite, Chicago, IL, Terry James Smith, Kessler, Smith & Powen, Chicago, IL, for Indopco, Inc.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion for summary judgment of Defendant Indopco Incorporated, doing business as Unichema North American ("Unichema"). For the following reasons, the motion is granted.

### I. FACTS [1]

Plaintiff Iona E. Johnson ("Johnson") is a former employee of Unichema, where she held the position of Executive Secretary for the Sales Department. Johnson claims that she was denied a promotion because she is black and that she was paid less than non-black secretaries in similar positions in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981.

Unichema hired Johnson as a Grade 04 secretary on November 14, 1988. Her starting salary was $19,053 per year. She was promoted to Grade 05 Executive Secretary within ten months and received a 13.67% salary increase. In September 1990, she received a 5.21% salary increase. In April 1991, she received a 4.76% salary increase, and in March 1992, she received a salary increase of 4.6%. In March 1993, she received a 5.2% salary increase.

Johnson was given a trial period in the position of Executive Secretary to the President, Robert J. Drennan ("Drennan") in May 1991. Johnson admits that performance problems were brought to her attention during her trial period.[2] She also admits that she does not know the educational back-

---

1. The facts are taken from the parties' submissions pursuant to Local Rules 12(M) and 12(N) of the United States District Court for the Northern District of Illinois ("Local Rules").

2. Johnson denies this statement and cites to her affidavit for support. However, in her deposition, she stated that Drennan had brought perfor-

mance problems to her attention. A plaintiff may not create a genuine issue of fact in an attempt to avoid summary judgment by contradicting sworn deposition testimony with a subsequent affidavit. *Darnell v. Target Stores,* 16 F.3d 174, 177 (7th Cir.1994).

ground, work experience, or other qualifications of the person who was ultimately selected for the job.

Johnson had not worked outside of her home for more than ten years prior to her start at Unichema in 1988. In her last paid position, Johnson was earning $10,000 per year. As stated above, she was hired as a Grade 04 secretary at an annual salary of $19,053. Ms. Sharon Bitterlin, a white woman, was hired as a Grade 04 secretary on April 9, 1990, a year and one-half after Johnson, and received a salary of $19,523 per year. She, as compared to Johnson, had been earning $17,000 in her last permanent position. Ms. Debra Garrett–Curry, a black woman, was hired on July 6, 1992, as a Grade 05 Executive Secretary at an annual salary of $27,144. In the position she held immediately prior to her employment by Unichema, Garrett–Curry was earning $24,000 per year. Ms. Debra Chaney, a white woman, was transferred to Unichema from Lever Brothers Company in New York, an affiliate of Unichema, in October 1991 as a Grade 05 Executive Secretary. She received the same salary at Unichema that she received at Lever Brothers, $28,971 per year.

Johnson does not know how any of her peers' compensation was established or the quality of their performance on the job. Johnson denies that she does not know how her peers' compensation was established. She also denies that she does not know the quality of their performance on the job; however, she does not cite to any specific evidence in the record to support her denial. In an attempt to get around the requirements of Local Rule 12(N), she cites generally to her entire thirty-seven paragraph affidavit as support for her denial. Local Rule 12(N) of the United States District Court for the Northern District of Illinois states that a party opposing summary judgment must file:

A concise response to the movant's [12(M)] statement that shall contain ... a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon....

Local Rule 12(N)(3)(a). All material facts properly set forth in the movant's 12(M) Statement will be deemed admitted if not properly controverted by the non-movant's 12(N) Statement. Local Rule 12(N)(3)(b). The Seventh Circuit has consistently upheld strict application of Local Rule 12(N). *Rosemary B. v. Board of Educ.*, 52 F.3d 156 (7th Cir.1995); *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir.1994); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453, 455 n. 4 (7th Cir.1994). "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes...." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994).

■ Johnson's citation to her entire affidavit to support her denial of the fact that she does not know how any of her peers' salaries were established or the quality of their performance falls short of the requirements of the Local Rule. It is clear that Johnson understands how to properly satisfy Rule 12(N) because in most of her 12(N) Statement, she cites to specific paragraphs of her affidavit to support her factual assertions. The court should not have to read an entire affidavit or deposition to glean which facts asserted in it contradict the movant's assertions. Thus, the court deems Unichema's assertions regarding Johnson's peers' compensation and performance as admitted.[3]

## II. *DISCUSSION*

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

**3.** The court notes that it did read Johnson's affidavit. No specific facts in the affidavit contradict Unichema's assertions. Johnson does assert that Cortino was unfamiliar with the mail merge and spell check functions of the company's word processing program. However, Cortino's lack of familiarity with certain specific tasks is not evidence of inferior overall ability, and it does not reveal that Johnson has personal knowledge of her peers' overall job performance or the basis upon which their salaries were determined.

party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Sherwood South, Inc.,* 38 F.3d 929, 931 (7th Cir. 1994); *Transportation Communications Int'l Union v. CSX Transp., Inc.,* 30 F.3d 903, 904 (7th Cir.1994). Summary judgment is not a discretionary remedy and must be granted when the movant is entitled to it as a matter of law. *Jones v. Johnson,* 26 F.3d 727, 728 (7th Cir.1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies,* 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment, *Walker v. Shansky,* 28 F.3d 666, 671 (7th Cir.1994). Nor will some metaphysical doubt as to the material facts suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

■■■ Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir.1994). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, the non-moving party is required to go beyond the pleadings with affidavits, depositions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

■■■ As a starting point for this discussion, the court is compelled to note that Johnson's memorandum in opposition to Unichema's motion for summary judgment on her claims of failure to promote and unequal pay does not contain a single citation to legal authority in support of her arguments. A skeletal argument, unsupported by relevant authority or reasoning, is merely an assertion which does not sufficiently raise the issue to merit the court's consideration. *United States v. Giovannetti,* 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press a point

by supporting it with pertinent authority or by showing why it is a good point despite a lack of authority ... forfeits the point. We will not do his research for him."); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *see Hanrahan v. Thieret,* 933 F.2d 1328, 1335 n. 13 (7th Cir.1991) (quoting *Dunkel* ). On this basis, the court views Johnson's claims as waived. However, because Johnson's position is so clearly deficient in law and fact, the court will take the time to address the merits.

### A. Failure to Promote

■■■ To establish a *prima facie* case of discrimination for failure to promote where there is no direct evidence of discrimination, the plaintiff must present evidence that she is (1) a member of a protected class, (2) that she was qualified for the position, (3) that she was not hired, and (4) that the defendant hired or promoted someone from outside the protected group with similar or lesser qualifications than the plaintiff. *Von Zuckerstein v. Argonne Nat'l Lab.,* 984 F.2d 1467, 1472–73 (7th Cir.1993). Once the plaintiff establishes a *prima facie* case, the defendant must present evidence that there was a legitimate nondiscriminatory reason for the plaintiff's treatment. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The presumption is rebutted if the reason "would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* If the employer satisfies this burden, then the plaintiff must demonstrate that the employer's proffered reason is a pretext. *Id.*

■■■ Johnson has failed to establish a *prima facie* case of discrimination in that she has not presented evidence that she was passed up for the position by a person with similar or lesser qualifications. The person who Unichema hired, Cortino, for the position had clearly superior work experience and educational background. Cortino was one course away from receiving her Associate's Degree in Secretarial Science from Triton College at the time she was hired. In contrast, Johnson has presented no evidence

that she has accumulated any college credits. Moreover, Cortino had twelve years of relevant work experience. The four years immediately prior to her hiring at Unichema, she worked as an Administrative Assistant/Marketing Coordinator for a Unichema competitor. Prior to her employment with Unichema, Johnson had not worked for ten years. Johnson has not presented any evidence which indicates that she was more qualified than or equally as qualified as Cortino. On the contrary, all of the evidence presented indicates that Cortino was significantly more qualified for the position than Johnson.

■ Moreover, even had she been able to establish a *prima facie* case, Johnson has not presented any evidence that Unichema's proffered reasons for its decision not to hire her are pretextual. A plaintiff can establish pretext directly by "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

Unichema's proffered reason is that Drennan was not satisfied with her performance during the three week trial period. Johnson has presented no direct evidence of discrimination which indicates that this was not the actual reason she was not given the position. Johnson has submitted an affidavit by Ms. Pam Kastivalis ("Kastivalis"), another Unichema employee. Kastivalis states that Eugene Flematti ("Flematti"), a Unichema Vice President, told her that he thought that Johnson could not handle the position of Executive Secretary to the President. She also states that Flematti told her that it would be bad if Johnson was given a chance at the position and it did not work out because "[i]t is difficult to fire a black girl." (Kastivalis Dep. at ¶ 3.)

■ In the first instance, this statement, which Flematti denies making, (Flematti Dep. at ¶ 3), does not reflect any discriminatory animus on his part, but rather, reflects his view of reality in the 1990s workplace. Not every reference to race in the employment context gives rise to a reasonable inference of discriminatory intent. *See Ballwanz v. Travenol Lab., Inc.*, 701 F.Supp. 627, 629 (N.D.Ill.1988) (collecting cases). Moreover, even if the statement were construed as discriminatory, an isolated discriminatory remark by someone who is not responsible for the employment decision at issue, without more, does not reasonably give rise to the inference of discriminatory intent by the decision maker. *La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1412 (7th Cir.1984). Drennan decided who would get the spot as his secretary, not Flematti. Therefore, Flematti's comment is irrelevant.

Johnson has presented no evidence which supports her contention that Drennan's purported dissatisfaction with her performance is not worthy of credence. Drennan wrote in a memorandum, composed after Johnson was denied the position as his secretary, that he had met with her and told her that her performance was deficient in three areas: her typing speed and accuracy; her ability to act as assistant in special projects requiring mathematical skills, problem solving, thought process, and organizational ability; and priority setting. The memorandum states that Johnson accepted the criticism well and did not disagree with the analysis. In addition, it states that Johnson stated that she appreciated the feedback and the manner in which it was presented. (Drennan Aff. Ex. B.)

Johnson contends that this evaluation by Drennan contrasts with earlier "glowing" evaluations by other supervisors. However, how other supervisors at a different time evaluated her performance is not relevant to the issue of whether she was capable of performing at the level expected by Drennan. *See Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 401 (7th Cir.1992) (noting that the determinative issue is whether the employee is meeting the employer's legitimate expectations at the time of the discharge not at some other time).

■ Johnson's contention that she was more qualified than Cortino because Cortino was unfamiliar with two word processing functions does not establish pretext. One person's ability to perform one or more

specific tasks does not automatically demonstrate that he is superior to another who has not mastered those tasks when the overall job performance is measured by the person's ability to perform many different functions. Moreover, even if Drennan were incorrect in his determination that Johnson's abilities were inferior to Cortino's that does not establish that his stated dissatisfaction with Johnson's performance was a pretext for discrimination. A reasonably held but erroneous belief is not a pretext for discrimination. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1112 (7th Cir.1992); *Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 559 (7th Cir. 1987).[4] Courts will not question an employer's good faith business decisions. *Schultz v. General Elec. Capital Corp.*, 37 F.3d 329, 334 (7th Cir.1994).

Johnson also contends that she was treated differently from Cortino because she alleges that Cortino was given a six month trial period and Johnson was only given three weeks. However, she cites to no supporting documentation showing that Cortino was hired on a trial basis. The personnel records indicate only that she was hired on July 29, 1991, and contain nothing indicating that she was hired as anything other than a permanent employee. In evaluating Cortino after six months on the job, Drennan noted that it was too early to make any judgments about the level of her initiative, and did not make an overall rating. Nevertheless, he rated her relatively high on several other grounds. That Drennan reserved judgment on the evaluation does not indicate that Cortino was in a trial period, and there is nothing in the record to support such an assertion.

Johnson's complaint that Cortino was given introductory courses in Lotus while Johnson learned Lotus on the job does not reflect on whether Drennan's reason for not giving Johnson the job were pretextual. Nothing in the record reflects that Johnson's knowledge

of Lotus or lack thereof played any role in Drennan's decision not to hire her personally, nor does she make that allegation. Moreover, she does not allege that she did not know Lotus during her trial period. The court notes that she states in her affidavit that she knew it as of August 1992, only a few months after her trial period. (Johnson Aff. at 26.)

Johnson has failed to demonstrate that there is a genuine issue of material fact regarding her claim that she was not promoted because of her race. Accordingly, Unichema is entitled to summary judgment on that claim.

### B. Unequal Pay

■ To make out a *prima facie* claim for unequal pay under the *McDonnell Douglas* burden shifting analysis, Johnson must establish that she was paid less than similarly situated white employees. *See Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1004 (7th Cir.1994). In an effort to state her claim for unequal pay, Johnson compares her salary to that of Cortino and notes that it was significantly lower. However, Cortino was hired as a Grade 06 Executive Secretary and Johnson was a Grade 05. Possibly of more significance is the fact that Cortino was secretary to the President, Drennan. Thus, her position had more responsibility, importance, and prestige. She admits as much in her affidavit in which she states that it was the one secretarial position in the company from which secretaries were promoted. Furthermore, her grave disappointment at not receiving the job, such disappointment as to cause her to file this lawsuit, illustrates that it was not a comparable position. Thus, that Cortino was paid more than Johnson does not give rise to an inference of discrimination because Cortino was not similarly situated.

Johnson also compares her salary to that of Debra Chaney ("Chaney"), a white female,

---

4. In his affidavit, Drennan sets out, without limitation, four specific examples of Johnson's poor performance. (Drennan Aff. at ¶ 7.) Johnson, in her affidavit, contends that these examples are false and gives differing factual accounts of the events described in Drennan's affidavit. Her contradictions do not create a genuine issue as to pretext for at least two reasons. First, as Drennan stated, those were just some examples of her poor performance, not an exhaustive list. Second, none of the examples speaks to her inability, as perceived by Drennan, to assist in projects requiring mathematical skills, problem solving, thought process and organizational ability, or to her typing speed and accuracy.

who earned approximately $100 per week more than Johnson. Chaney was transferred from Lever Brothers in New York where she was earning $28,971 per year. Unichema had no involvement in her hiring, and her salary stayed the same when she transferred to Unichema. When she was hired by Lever Brothers, Chaney had almost seven years of relevant work experience.

The facts Johnson leaves out of the mix undercut her position. There were two other women working as Grade 05 Executive Secretaries at the time this law suit was filed: Debra Garrett–Curry, a black woman, who was earning more than Johnson; and Sharon Bitterlin, a white woman, who was earning less than Johnson. Thus, Johnson has not shown that all, or even most, white secretaries in similar positions were earning more than she was. Therefore, she has not made out a *prima facie* case.

█ Furthermore, Unichema has articulated a legitimate business reason for the difference in secretary salaries. Unichema has stated that the starting salaries of all secretaries were based on each secretary's qualifications, prior salary history, the job requirements, and market forces at the time they were hired. Subsequent salary increase were based on qualifications, experience, job performance, and were based upon a percentage of the initial starting salary. Therefore, according Unichema, to the extent that Johnson's salary was lower than Chaney's, it was the result of Chaney's higher starting salary, job performance, and experience.

Johnson has not presented the court with any evidence indicating that this justification for the different salary levels is pretextual. As discussed above, Johnson has admitted that she does not know how other secretaries' salaries were determined or the quality of their actual performance on the job. Thus, she is unable to establish that her salary was established on a different basis or that she was performing as well as other secretaries.

In her affidavit, but not in her 12(N) Statement, Johnson makes reference to a job survey conducted by Karen Dombrauskas ("Dombrauskas"). Johnson states that Dombrauskas told her that the survey indicated that Johnson had a heavier workload than Chaney and Cortino. From this, she draws the conclusion that Chaney and Cortino were her peers. Assuming that this survey was done and that the conversation took place, for Johnson has not attached a copy of the survey or an affidavit from Dombrauskas, Johnson still has not shown that Unichema's reason for the differing salaries is a pretext for discrimination. As was discussed above, Cortino was clearly not in a similarly situated position. Assuming, for the purposes of argument, that Chaney was Johnson's peer, the mere fact that Johnson may have had a heavier workload than Chaney does not call into question Unichema's proffered reason for Chaney's higher salary. Johnson states that her workload was three times heavier according to the survey. She does not state that she was able to accomplish three times the amount of work as Chaney in the allotted time, nor would that affect the other factors such as qualifications, experience, starting salary, and market forces that Unichema contends go into the salary decisions. Nor would it affect the fact that Chaney's starting salary was determined by a different company in New York.

Johnson has not presented the court with evidence from which a reasonable jury could infer that she was paid less than white secretaries because of her race. Accordingly, Unichema's motion for summary judgment on this claim is granted.

### III. *CONCLUSION*

For the foregoing reasons, Unichema's motion for summary judgment is granted.

IT IS SO ORDERED.